IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

ANTHONY DRAINE,           )
                         )
    Plaintiff,         )
                         )
v.                        )    No. 10-2378
                         )
VERONICA LEAVY, individually,   )
and AUGUSTINE CURRIE,        )
individually, employees of the )
Tennessee Board of Probation    )
and Parole,              )
                         )
    Defendants.       )

---

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

Plaintiff Anthony Draine ("Plaintiff") brings three claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth Amendment, Eighth Amendment, and Due Process Clause against Defendants Veronica Leavy ("Leavy") and Augustine Currie ("Currie") (collectively, "Defendants"). (See Compl. ¶¶ 1, 19, 20, 52-71, ECF No. 1.) Before the Court is Defendants' motion to dismiss those claims based on absolute quasi-judicial immunity. (See Mot. to Dismiss, ECF No. 11.) Draine has responded in opposition. (See Pl.'s Mot. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 16.) Defendants have replied. (See Reply to Resp. to Mot. to Dimiss, ECF No. 17.) For the following reasons, Defendants' motion is GRANTED.

## I.   Background

After serving twenty years in Tennessee state prison for attempted first-degree murder, Plaintiff was paroled on August 23, 2007. (Compl. ¶¶ 8-11.) Plaintiff resided in the Memphis, Tennessee area and was supervised by the Memphis office of the Tennessee Board of Parole and Probation (the "Board"). (See id. ¶ 8.) Since his parole, Plaintiff had been a model parolee, and his parole was set to expire on April 22, 2010. (Id. ¶¶ 12-13.)

As part of its supervision, the Board conducted "routine record checks" to see if the names of any of its supervised parolees appeared on lists of arrestees. (See id. ¶ 14.) During one such check, the name "Anthony Draine" appeared on a list of individuals who had been charged with offenses (the "Arrestee List").[1] (Id. ¶ 15.) That Anthony Draine was not Plaintiff, but he was a parolee who had been charged with sexual battery, resisting official detention, and gambling. (See id. ¶¶ 15-16, 35.) Leavy, a supervising parole officer, conducted the record check that located the Arrestee List containing the name "Anthony Draine" and brought it to the attention of Currie, the parole officer who directly supervised Plaintiff. (Id. ¶¶ 20-21.) Without verifying the charges or the offender's

---

[1] The Complaint's caption states that Plaintiff's name is "Anthony Draine," but the factual allegations contained in the complaint refer to him as "Anthony Drain." (Compare Compl. at 1, with id. ¶¶ 8-51.) The Court refers to Plaintiff as Plaintiff, adopts the spelling of Plaintiff's name as used in the caption, and uses that spelling when referring to the individual on the Arrestee List for whom Plaintiff was mistaken.

identity, Leavy ordered Currie to issue a Parole Violation Report and Notice of Charges (the "Report"). (Id. ¶¶ 22-23.) Currie issued the Report without verifying the charges or the offender's identify. (Id. ¶ 24.) Plaintiff alleges that those actions violated the Board's rules and regulations. (Id. ¶ 25.) On October 2, 2009, the Board issued the Report and a parole warrant, which resulted in Plaintiff's being arrested and incarcerated. (Id. ¶ 26.)

Plaintiff alleges various facts suggesting that Defendants should have realized that he was not the Anthony Draine on the Arrestee List. For example, when Plaintiff was arrested and taken to Shelby County Jail for processing, officials noted that the R&I number on the parole warrant did not correspond to Plaintiff. (Id. ¶¶ 27-28.) Because Plaintiff was initially incarcerated before Shelby County initiated the R&I system, which assigned a unique number to each inmate and matched that number to his fingerprints, he had not received an R&I number. (Id.¶ 28-29.) At processing, Plaintiff received an R&I number and, not having had an R&I number previously, Plaintiff could not have been the person on the warrant. (Id. ¶ 30.)

In addition to the R&I number, the Report included the R&I number of the Anthony Draine who had been charged with the offenses that resulted in Plaintiff's arrest. (Id. ¶ 31.) The Report also included that Anthony Draine's booking number, a

3

number used to link a person to a specific charge in the court system. (Id. ¶¶ 32-33.) Because the Anthony Draine on the Arrestee List was ten years younger than Plaintiff and had a social security number, telephone number, and address different from Plaintiff, information available on the Shelby County General Sessions' website also would have revealed that Plaintiff was not the Anthony Draine on the Arrestee List. (Id. ¶ 34.) The Board also had access to a database with photographs of parolees, which would have demonstrated that Plaintiff was not the same Anthony Draine. (Id. ¶ 35.) Finally, the Board had access to Plaintiff's TOMIS number, a unique identifying number used by the Department of Corrections, and the TOMIS numbers for Plaintiff and the Anthony Draine on the Arrestee List were different. (See id. ¶ 38.)

Plaintiff alleges that, under Tennessee law, at least two individuals should have reviewed the Arrestee List and verified that he was the person appearing on the list. (Id. ¶ 44.) Because the Board failed to conduct that two-step review, Plaintiff was sent to a prison of the Tennessee Department of Corrections (the "Department"). (Id. ¶ 39.) Although Plaintiff requested a preliminary hearing to correct the mistake and alleges that, under Tennessee law, he should have been given such a hearing, because the Anthony Draine on the Arrestee List had waived his right to that hearing, Plaintiff did not receive

4

one.  (See id. ¶¶ 45-48.)  Plaintiff remained in custody of the Department for almost thirty days before the Board notified the Department that it had withdrawn the warrant for his arrest. (Id. ¶ 39.)  The Department then released Plaintiff in a county different from his home county without any transportation.  (See id. ¶ 40.)

Based on those events, Plaintiff filed suit against the Defendants, the parole officers involved in issuing the Report that resulted in his arrest and incarceration.  (See Compl. ¶ 6-7.)  Defendants have moved to dismiss Plaintiff's claims, arguing that they have absolute quasi-judicial immunity from suit.  (See Defs.' Mot; Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 11-1.)  Plaintiffs argue that Defendants are entitled to qualified immunity only.  (See Mem. of Law to Pl.'s Mot. in Opp'n to Defs.' Mot. to Dismiss 4-5, ECF No. 16-1.)

## II.  Jurisdiction

Because Plaintiff brings this action for Defendants' alleged constitutional rights violations under 42 U.S.C. § 1983, his action raises a federal question, and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the

5

plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555). Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

6

suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

## IV. Analysis

Whether immunity attaches to a defendant in an action brought under 42 U.S.C. § 1983 is a question of federal law. Dean v. Byerley, 354 F.3d 540, 555 (6th Cir. 2004) (citation omitted); see Loggins v. Franklin Cnty., 218 F. App'x 466, 476 (6th Cir. 2007) (citing Martinez v. California, 444 U.S. 277, 284 (1990)). Courts use a functional approach when considering whether immunity applies. See Creusere v. Weaver, No. 07-5859, 2009 U.S. App. LEXIS 3135, at *17-18 (6th Cir. 2009) ("Courts must use a functional approach to determine whether an official is entitled to absolute immunity. Under this approach, courts look to 'the nature of the function performed, not the identity of the actor who performed it.'" (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993))); Moldowan v. City of Warren, 578 F.3d 351, 399 (citing Holloway v. Brush, 220 F.3d 767, 774 (6th Cir. 2000)).

Judges performing judicial functions are absolutely immune from civil liability. Stump v. Sparkman, 435 U.S. 349, 362 (1978); see also Barrett v. Harrington, 130 F.3d 246, 254-56 (discussing the origins of and policy rationales for judicial immunity) (citations omitted). When other officers, including

7

parole officers, perform judicial functions, they too are absolutely immune from civil liability under the doctrine of quasi-judicial immunity.  See Horton v. Martin, 137 F. App'x 773, 775 (6th Cir. 2005); Balas v. Leishman-Donaldson, No. 91-4073, 1992 U.S. App. LEXIS 22411, at *13-14 (6th Cir. Sept. 9, 1992); Timson v. Wright, 532 F.2d 552, 553 (6th Cir. 1976) (citations omitted).

Although the Sixth Circuit has extended quasi-judicial immunity to parole officers, "that immunity will only cloak functions performed by such officers which are judicial in nature." Balas, 1992 U.S. App. LEXIS 22411, at *13-14 (citing Imbler v. Pachtman, 424 U.S. 409 (1976)). The gravamen of Plaintiff's complaint is that Defendants failed to verify whether he was the Anthony Draine on the Arrestee List and therefore improperly caused a Parole Violation Report to issue. (See Compl. ¶¶ 20-25). The issue is whether, when Defendants engaged in those acts, they were undertaking a judicial function and are therefore immune from suit.

The Sixth Circuit has explained that, when a probation officer investigates and evaluates a probationer to determine whether he is complying with the terms of his probation, he undertakes a judicial function. See Loggins, 218 F. App'x at 476; Balas, 1992 U.S. App. LEXIS 22411, at *15. In those cases, the Sixth Circuit explained that, "when a judge seeks to

8

determine whether a [probationer] is complying with the terms of probation, the judge is performing a judicial function." Loggins, 218 F. App'x at 476 (quoting Balas, 1992 U.S. App. LEXIS 22411, at *15). Where probation officers perform that function at the judge's discretion, "they are entitled to quasi-judicial immunity." Id. ("All of the same considerations that would apply to the judge apply to the probation officer."). District courts in this circuit have concluded that, when parole officers evaluate their parolees to determine whether they are complying with the terms of their parole, they also undertake a judicial function. See Cain v. Caruso, No. 08-14699, 2010 U.S. Dist. LEXIS 69873, at *12 (E.D. Mich. May 24, 2010); Warick v. Ky. Justice & Pub. Safety Cabinet, No. 08-146-ART, 2008 U.S. Dist. LEXIS 75248, at *15-16 (E.D. Ky. Sept. 26, 2008).

Plaintiff's allegations mirror those of the parolee in Warick. Compare Warick, 2008 U.S. Dist. LEXIS 75248, at *2-3, 14-16, with (Compl. ¶¶ 20-25). In Warick, a parole officer had a parolee arrested for seven unverified parole violations without discussing the basis of those violations with him. Warick, 2008 U.S. Dist. LEXIS 75248, at *2-3, 15. Although the parolee in Warick alleged that the parole officer had not verified his violations, the district court concluded that the officer was protected by quasi-judicial immunity because she was evaluating whether the parolee had violated the terms of his

parole.   See id. at *14-16 ("Though [the parole officer's] actions may not have been ideal, they were part of her judicial responsibilities as a parole officer and as such she is entitled to immunity for those actions.").

Like the parole officer's actions in Warick, Defendants' failure to verify Plaintiff's identity and their issuance of a Parole Violation Report occurred in the course of evaluating whether Plaintiff had violated the terms of his parole.   See Warick, 2008 U.S. Dist. LEXIS 75248, at *15-16.   When that evaluation function is undertaken by a parole officer, it is judicial in nature.   See Loggins, 218 F. App'x at 476; Balas, 1992 U.S. App. LEXIS 22411, at *15; Cain, 2010 U.S. Dist. LEXIS 69873, at *12; Warick, 2008 U.S. Dist. LEXIS 75248, at *15-16.

Because Defendants were parole officers undertaking judicial functions, they are absolutely immune from suit under the doctrine of quasi-judicial immunity.   See Horton, 137 F. App'x at 775; Cain, 2010 U.S. Dist. LEXIS 69873, at *11-12; Warick, 2008 U.S. Dist. LEXIS 75248, at *14-16.   Because the Defendants are absolutely immune from suit, Plaintiff has failed to state a claim against them.   See Iqbal, 129 S. Ct. at 1949.

**V.   Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

So ordered this 1st day of March, 2011.

s/ Samuel H. Mays., Jr.
SAMUEL H. MAYS, JR
UNITED STATES DISTRICT JUDGE